# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:13-cr-03103-MDH-2 |
| ) | |
| SEAN BOND, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant Sean Bond pleaded guilty to Conspiracy to Distribute 1000 Kilograms or More of Marijuana and Conspiracy to Commit Money Laundering (Docs. 70-71). He agreed to forfeit to the United States certain property either used in furtherance of his drug trafficking activities or derived therefrom. The Court accepted Defendant's plea (Doc. 78) and entered a preliminary order of forfeiture (Doc. 79).[1] The government thereafter caused to be published on the website www.forfeiture.org notice of the Court's order and of the government's intent to dispose of the property in such a manner as directed by the Attorney General (Doc. 86). Pursuant to 21 U.S.C. § 853(n)(2), three persons filed petitions asserting interests in the property ordered forfeited to the United States (Docs. 82-84).

The Court reviewed the third-party petitions and set an ancillary hearing pursuant to 21 U.S.C. § 853(n)(4) (Doc. 87). Prior to the hearing, the government filed a motion to dismiss the ancillary claims (Doc. 88). At the hearing, the Court heard arguments and evidence concerning

---

[1] The forfeited property includes: "(1) 2002 BMW, 725i, VIN: WBAGL634X2DPJ0523, seized from Bond June 19, 2013; (2) 2007 Cadillac Escalade, VIN: 3GYFK62887G216592, seized from Bond June 19, 2013; (3) 2002 Firebird Pro-Mod RaceCar, 77001, seized from Bond June 19, 2013; (4) 1968 Chevrolet Camaro, VIN: 124378N1457484, seized from Bond June 19, 2013; (5) Blue Go-Kart, seized from Bond June 19, 2013; (6) Orange Go-Kart, seized from Bond June 19, 2013; (7) Yellow Go-Kart, seized from Bond June 19, 2013; (8) 2006 Haulmark Trailer, TH85X25WT3, White, VIN: 16HGB24266U046893, seized from Bond June 19, 2013; (9) 2004 Ford F350, VIN: 1FTWW33P04EB08792, seized from HANSON June 19, 2013; and (10) Wellcraft Martinique Boat, WELCCA36L394, seized from Bond June 19, 2013."

the third-party claims and the government's motion to dismiss.  Following the hearing and an opportunity for post-hearing briefs,[2] the matter is now ripe for review.

**STANDARD**

"Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  The petition must be signed by the petitioner and shall set forth "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought."  *Id.* at § 853(n)(3).  A third-party forfeiture petition may be dismissed for lack of standing, failure to state a claim, or any other lawful reason.  *United States v. White*, 675 F.3d 1073, 1077 (8th Cir. 2012) (citing Fed. R. Crim. P. 32.2(c)(1)(A)).

In order to have standing to proceed with an ancillary proceeding, the petitioner must make an initial showing of a "legal interest" in specific property.  *United States v. Timley*, 507 F.3d 1125, 1130 n.2 (8th Cir. 2007).  This has "both constitutional and statutory aspects."  *Id.* at 1129.  To establish constitutional standing, a party must demonstrate an ownership or possessory interest in the seized property – "[a]n ownership interest sufficient for Article III standing can be shown by actual possession, control, title, and financial stake."  *White*, 675 F.3d at 1078 (internal quotations omitted).  To establish statutory standing, the court must "look to the law of the jurisdiction that created the property right" to determine whether the claimant has a valid "legal" interest.  *Timley*, 507 F.3d at 1129-1130.  For example, if the property right arises under state

---

[2] Specifically, the Court granted the United States ten days in which to file a post-hearing brief concerning claimant Rick Ducusin's alleged interest in light of Missouri's common law artisan's lien and Mo. Rev. Stat. § 430.020.  The Court gave Mr. Ducusin seven days to respond to the government's brief, if he chose to do so.

law, the federal court must first look to state law to determine whether the claimant has a legal interest in the property. *Id.* at 1130.

"If a court determines the claimant has an interest in the property under the law of the jurisdiction that created the property right, then at the ancillary hearing, it must next look to federal law, i.e., to 21 U.S.C. § 853(n)(6), to determine if the claimant will prevail[.]" *Id.* To determine whether a claimant will prevail in the ancillary hearing, the court must ascertain whether the claimant qualifies for relief under one of the two prongs of 21 U.S.C. § 853(n)(6). *White*, 675 F.3d at 1081. Under those prongs, a successful claimant must demonstrate, by a preponderance of the evidence, that she either has priority of ownership in the forfeited property under subsection (A) or that she was a bona fide purchaser for value of the property under subsection (B). *See* 21 U.S.C. § 853(n)(6)(A)-(B).

The priority-of-ownership ground under subsection (A) is satisfied where the petitioner's legal right, title, or interest in the property was either "vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." *Id.* at § 853(n)(6)(A). The priority-of-ownership ground embodies the relation-back doctrine, which states that "title to the forfeited property vests in the United States at the time of the defendant's criminal act." *Timley*, 507 F.3d at 1130. The bona-fide-purchaser ground under subsection (B) is an exception to the relation-back doctrine and allows a person who acquired an interest in property after the government to nonetheless prevail in an ancillary proceeding. *Id.* To establish status as a bona-fide-purchaser under § 853(n)(6)(B), a claimant must show: "(1) the claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide

3

purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." *Id.* at 1130-31.

## ANALYSIS

In the present matter, James Bond, Ashley Bond, and Rick Ducusin each filed a petition asserting an interest in property forfeited by Defendant Sean Bond to the government. Each claimant's alleged interest relates to a separate piece of property; therefore, the Court will address each claimant's interest in turn.

### A. Claim of James Bond

James Bond (hereinafter "Mr. Bond") is the father of Defendant Sean Bond. Mr. Bond filed a third-party forfeiture petition claiming an interest in the Wellcraft Martinique Boat seized on June 19, 2013 and forfeited to the government. The petition asserts that Mr. Bond is the "sole owner" of the boat and states that he did not know of the conduct giving rise to the forfeiture. Mr. Bond attached to his petition a copy of the Marine Certificate of Title for the boat at issue. The Certificate of Title shows the owner as "Bond James TOD Bond Sean" and shows a purchase date of July 3, 2009.

The government moved to dismiss Mr. Bond's petition. The government argues that Mr. Bond's "bald assertion of ownership is not sufficient" because he failed to assert a legal basis for his interest and he failed to provide the time and circumstances surrounding his acquisition of the property. The government further argues that Mr. Bond lacks standing to assert any interest in the boat because the evidence shows that Mr. Bond exercised no dominion or control over the property and acted a mere nominee rather than an owner. Finally, the government noted its intention to present evidence showing that Mr. Bond did have reason to believe that the boat was

4

subject to forfeiture because he was aware that his son put the boat in his name to hide the asset from law enforcement and he knew his son was a drug dealer.

The government is correct that Mr. Bond's petition fails to state a claim. Under Missouri law, a certificate of title to a motor vehicle is prima facie evidence of ownership, capable of being rebutted by other evidence. *See Landshire Food Serv., Inc. v. Coghill*, 709 S.W.2d 509, 512-13 (Mo. Ct. App. 1986). Thus, contrary to the government's position, Mr. Bond's petition presented a sufficient legal basis to state an interest in the boat because he attached the boat's certificate of title showing himself as the sole owner. Nonetheless, the government is correct that Mr. Bond failed to describe the time and circumstances of his acquisition of the property, as required by 21 U.S.C. § 853(n)(3). Thus, Mr. Bond's petition fails to adequately plead a third-party forfeiture claim. The Court need not decide whether this failure alone is sufficient to warrant dismissal because, even assuming that Mr. Bond presented sufficient facts in his petition as to his acquisition of the alleged interest, Mr. Bond's petition fails for lack of standing.

The evidence presented at the hearing shows that Mr. Bond was a mere nominal owner of the Wellcraft Martinique Boat and therefore lacks standing to assert a legal interest in that property.[3] *United States v. One 1990 Chevrolet Corvette, VIN No. 1G1YY3384L5104361, with All Appurtenances & Attachments thereon*, 37 F.3d 421, 422 (8th Cir. 1994) ("A nominal owner who lacks possession of the defendant property and did not exercise dominion and control over it does not have an interest sufficient to have standing to challenge forfeiture."); *see also United States v. Ford 250 Pickup*, 980 F.2d 1242, 1246 (8th Cir. 1992) ("bare legal title by one who does not exercise dominion and control over the property is insufficient to establish ownership"). The evidence adduced at the ancillary hearing revealed that Defendant Sean Bond was in the

---

[3] Mr. Bond did not attend the ancillary hearing. His daughter, Teri Bond, attended the hearing as his durable power of attorney and stated that Mr. Bond is on hospice care. She stated that she has no personal knowledge about the boat other than hearsay from her father and she did not attempt to present evidence.

5

practice of titling his vehicles in other person's names in order to retain his Social Security disability benefits; that Defendant told Brian Hanson he was going to buy a boat to put on Table Rock Lake and he was going to put it in his father's name; that Defendant paid the insurance and marina fees for the boat; that Defendant referred to the boat as "my boat"; that Defendant loaned the boat out for others to use; that Defendant decided when to sell the boat and at what price; and that Defendant referred to the boat as "my boat" even when speaking with his father, Mr. Bond. Defendant's Plea Agreement (Doc. 70) further reveals that "on or about July 3, 2009, the defendant, Sean Bond, purchased a Well Craft 3200 Martinique, in part with drug proceeds, which he registered in his father's name."

Thus, because Mr. Bond held bare legal title to the boat and did not exercise dominion and control over the boat, he lacks standing to assert a third-party interest in the forfeited property. Accordingly, the government's motion to dismiss Mr. Bond's ancillary claim is **GRANTED** and Mr. Bond's petition is **DENIED**. The Wellcraft Martinique Boat is properly forfeited to the government.

### B. Claim of Ashley Bond

Ashley Bond (formerly Ashley Oleskiw) is the current wife of Defendant Sean Bond. Mrs. Bond filed a third-party forfeiture petition claiming an interest in the 2002 BMW 745i seized on June 19, 2013 and forfeited to the government. Mrs. Bond claims to be the sole owner of the BMW and attached a Missouri Certificate of Title to her petition. The Certificate of Title shows a purchase date of August 15, 2011 and shows Ashley Oleskiw as the owner of the vehicle with Sean Bond as a lienholder. Mrs. Bond also attached to her petition a Notice of Lien Release, which shows that Defendant's lien on the vehicle was released on August 5, 2013. Mrs. Bond claims to be an innocent owner of the vehicle and alleges she did not know of the conduct

giving rise to the forfeiture and/or she was a bona fide purchaser without cause to believe the property was subject to forfeiture. As to her acquisition of the property, Mrs. Bond states that on or about August 15, 2011, she traded a GMC Yukon Denali that she purchased with gifted funds from her grandfather "straight across" for the 2002 BMW 745i. She states that Defendant Sean Bond loaned her $500 for taxes, tags, insurance, and repairs on the car, which created the lien in Defendant's name; however, she states that "I've since paid him in full."

The government moved to dismiss Mrs. Bond's petition. The government argues that "evidence to be presented at the ancillary hearing will demonstrate that this car trade was done in exchange for a drug debt that Defendant Bond owed Brian Hanson"[4] and that "[t]his is another case of Defendant Bond using family members to hide assets from law enforcement." The government further argues that Mrs. Bond lacks standing because her alleged interest meets neither prong of 21 U.S.C. § 853(n)(6).

To the extent that the government seeks to dismiss Mrs. Bond's petition, such relief is denied. Mrs. Bond adequately pleaded all of the elements of a third-party forfeiture petition under 21 U.S.C. § 853(n)(3) and the government cited no specific failure of Mrs. Bond to state a claim. Moreover, Mrs. Bond pleaded sufficient facts in her petition and presented sufficient facts at the hearing to establish standing – i.e. a legal interest in the property. Mrs. Bond provided the certificate of title for the vehicle at issue, showing herself as the owner. *See Landshire Food Serv., Inc. v. Coghill*, 709 S.W.2d 509, 512-13 (Mo. Ct. App. 1986) (certificate of title is prima facie evidence of ownership). Moreover, unlike the claim of Defendant's father discussed above, the evidence presented at the hearing shows Mrs. Bond was more than a "straw man" or nominal owner. *See United States v. Totaro*, 345 F.3d 989, 995-96 (8th Cir. 2003)

---

[4] The government corrected this statement at the ancillary hearing and presented evidence that the car trade was done in exchange for a drug debt that Brian Hanson owed Defendant Bond, not vice versa.

7

(holding claimant who lived on property, invested in property's ownership, and encumbered property with tax liens exercised sufficient dominion and control over property to be more than a mere straw owner). Rather, the evidence presented at the hearing shows that Mrs. Bond did give value for the BMW by exchanging her separately owned Denali and that, while Defendant did use the BMW, Mrs. Bond drove it more often than he did. Based on this evidence, Mrs. Bond has a sufficient legal interest to satisfy constitutional and statutory standing.

Having survived the government's motion to dismiss, Mrs. Bond's forfeiture petition prevails only if the she can prove, by a preponderance of the evidence, that she has a legal interest superior to the government's under § 853(n)(6). The Court finds that Mrs. Bond failed to prove either priority-of-ownership or that she was a bona-fide purchaser; therefore, her third-party forfeiture petition must fail.

First, Mrs. Bond failed to show priority-of-ownership. The undisputed testimony reveals that Brian Hanson traded his BMW to Defendant in exchange for the release of a drug debt that Hanson owed to Defendant, which arose during the course of their conspiracy to distribute marijuana.[5] Both Hanson and Defendant stated that the BMW was subsequently titled in Ashley Oleskiw's name.[6] Under the relation-back doctrine, "title to the forfeited property vests in the United States at the time of the defendant's criminal act." *United States v. Timley*, 507 F.3d

---

[5] Defendant's Plea Agreement (Doc. 70) states: "during the course of the conspiracy, co-defendant Brian D. Hanson, gave the defendant Sean Bond a 2002 BMW 745i and an 1969 Chevrolet Chevelle to pay a marijuana drug debt which arose during the conspiracy to distribute marijuana. Subsequently, BOND transferred the title of the 2002 BMW 745i to his then girlfriend[.]" Brian Hanson testified that Defendant gave him $28,000 to purchase 100 pounds of marijuana; that Hanson purchased the marijuana from a supplier but then there was a drug bust and the marijuana was seized; that Hanson agreed to exchange the BMW, a Chevelle, and a trailer for a Denali and the release of the remaining drug debt; and that Defendant told him he needed to have the title of the BMW in Ashley Oleskiw's name because Defendant was allowed only one vehicle per SSI disability.

[6] *See supra* at note 5. Mrs. Bond testified that Defendant never transferred the vehicle to her; rather she stated she "went to Brian and traded Brian so it was in my name." However, Mrs. Bond's testimony is not credible, especially in light of the transaction described by Defendant and Hanson, Hanson's testimony that he never doubted the Denali was Defendant's, and Hanson's testimony that he was aware Defendant was going to title the vehicle in Ashley's name in order to retain his Social Security benefits.

8

1125, 1130 (8th Cir. 2007). Where the property constitutes proceeds of an offense, a third party cannot prevail under section 853(n)(6)(A) because "the proceeds of the offense do not exist before the offense is committed, and when they come into existence, the government's interest under the relation-back doctrine immediately vests." *See id*. Here, title to the BMW vested in the government when Defendant released Hanson's drug debt and acquired the vehicle. Therefore, Mrs. Bond's claim fails under subsection (A).

Mrs. Bond also failed to show that she was a bona-fide purchaser of the BMW who was reasonably without cause to believe that the property was subject to forfeiture under subsection (B). During direct examination, the Court asked Mrs. Bond whether any drug transaction was related to her trading the Denali for the BMW. Mrs. Bond testified that "[Defendant] came to me and told me that – asked me if I wanted to trade the Denali to Brian for the BMW." Mrs. Bond testified that she was aware at the time of the trade that Defendant was a marijuana dealer and that Defendant had "gotten stuff" from Hanson or vice versa. While Mrs. Bond denied having been present during any drug transactions between Defendant and Hanson, Hanson testified that Mrs. Bond was present during some of the marijuana transactions, that she was aware of what was going on, and that she did not seem surprised. Moreover, the circumstantial evidence shows that Defendant had conversations with Mrs. Bond referencing "dropping off loot" and that Mrs. Bond was aware that Defendant's only source of legitimate income was Social Security payments of $550 per month, along with alleged settlement proceeds. Nonetheless, Mrs. Bond testified that during the time in question she was a stay-at-home mom and Defendant provided all of the money for their daily expenses of life. Based on the foregoing evidence, the Court finds that Mrs. Bond failed to show by a preponderance of the evidence that

9

she was reasonably without cause to believe that the BMW was subject to forfeiture. Accordingly, her claim must also fail under subsection (B).

In sum, the Court holds that Mrs. Bond presented sufficient evidence to show a legal interest in the BMW but failed to show a legal interest superior to the government's. Therefore, the government's motion to dismiss Ashley Bond's claim is **DENIED** and Mrs. Bond's petition is also **DENIED**. The 2002 BMW 745i is properly forfeited to the government.

### C. Claim of Rick Ducusin

Rick Ducusin is the owner of Rooster's Paint and Speed. Mr. Ducusin filed a third-party forfeiture petition claiming an interest in the 2002 Firebird Pro-Mod Race Car seized on June 19, 2013 and forfeited to the government. Mr. Ducusin's petition states that he is "requesting the property to put a mechanics lien due to unpaid balance . . . of $13,720.00" based on his shop's repairs/improvements to the Firebird, including a complete paint job, mounting of motor, rewiring the electrical system, new windows, and mounting rear tires. Along with his petition, Mr. Ducusin attached a "customer approval estimate document" signed by Defendant Sean Bond on March 1, 2013 and showing a total estimate of $16,600, along with various receipts showing materials purchase for the repairs/improvements on the Firebird.

The government moved to dismiss Mr. Ducusin's petition. The government argues that Mr. Ducusin is a mere general creditor who does not have a claim as to a specific piece of property. Therefore, the government argues that Mr. Ducusin does not have standing and his claim should be dismissed.

At the ancillary hearing, Mr. Ducusin testified consistent with his petition. He stated that Defendant Sean Bond made three payments on the balance of $16,600 – $2,200 on March 1, 2013, $380 on April 23, 2013, and $300 on April 27, 2013. He acknowledged that the estimate

10

document does not say anything about Roosters Paint and Speed having a lien over the vehicle, nor has he filed for one; however, he also testified that the business never gave up possession of the vehicle because the vehicle was seized by the government before the repairs/improvements were completed. As to Defendant Sean Bond, Mr. Ducusin stated that he "has known him for years from street racing and race track[.]" Mr. Ducusin testified that he was not aware of the pending criminal charges at the time he took the vehicle into repair, nor was he aware that Defendant sold drugs.

At the ancillary hearing, the government maintained its position that Mr. Ducusin is a general, unsecured creditor. When asked by the Court about Missouri artisan's liens and Missouri Revised Statute section 430.020, the government offered to present additional research on the issue, which the Court allowed. The government's post-hearing brief (Doc. 93) acknowledges that "[t]he Missouri common law artisan's lien is codified at Mo. Rev. Stat. § 430.020" and notes that "the statute requires the lienholder to 'obtain a written memorandum of the work or material furnished, signed by the owner of the vehicle…'" The government then assumed the Court would find the invoice presented by Mr. Ducusin sufficient to satisfy the written memorandum requirement and assumed that Mr. Ducusin has a lien for the automobile repairs made on the Firebird. Nonetheless, the government argued that Mr. Ducusin cannot prevail because he did now show that his interest arose prior to the government's interest under the relation-back doctrine.

As an initial matter, the Court finds Mr. Ducusin does have a valid legal interest in the Firebird and therefore denies the government's motion to dismiss. To determine standing, the Court looks to Missouri law. Missouri law provides a statutory lien for "every person who furnishes labor or material on any vehicle or part or equipment thereof, who shall obtain a

written memorandum of the work or material furnished, or to be furnished, signed by the owner of the vehicle[.]" Mo. Rev. Stat. § 430.020. The lien is "for the amount of such work or material as is ordered or stated in such written memorandum" and exists so long as the vehicle or parts are "kept or stored, or . . . placed in the possession of the person furnishing the labor or material[.]" *Id.* Here, Mr. Ducusin presented a written memorandum of the work and materials to be furnished on the Firebird, which was signed by Defendant Sean Bond. Mr. Ducusin testified that he never relinquished possession of the Firebird; rather, it was seized directly from his shop as a part of this proceeding. Accordingly, Mr. Ducusin has a valid lien on the Firebird under Mo. Rev. Stat. § 430.020 and therefore has standing to proceed with his claim. While the government is correct that a general, unsecured creditor does not have standing to proceed with a third-party ancillary claim, Mr. Ducusin is more than a general unsecured creditor.[7]

Furthermore, the Court finds that Mr. Ducusin presented sufficient evidence under 21 U.S.C. § 853(n)(6) to prevail at the ancillary proceeding. Because the Firebird was purchased with criminal proceeds,[8] the government is correct that Mr. Ducusin's claim fails under subsection (A) because of the relation-back doctrine. *See United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007) ("where the property was proceeds of an offense, a third party can

---

[7] The government cited *United States v. Watkins*, 320 F.3d 1279, 1281 (11th Cir. 2003) to support its general, unsecured creditor claim. That case is clearly distinguishable. There, two claimants loaned the defendant money to purchase automobiles for them. *Watkins*, 320 F.3d at 1281. After the defendant was arrested and convicted, and the government filed a motion seeking forfeiture of $63,380, the claimants filed ancillary petitions seeking certain sums of money. *Id.* The Eleventh Circuit held that the unsecured creditors had no interest that attached to specific property and therefore could not qualify as bona fide purchasers for value of the right, title, or interest in the property as required under 21 U.S.C. § 853(n)(6)(B). *Id.* at 1282-83. Here, by contrast, Defendant filed a petition concerning an interest in a specific piece of property, rather than a sum of money, which was based upon a possessory lien interest rather than the general claim of a mere unsecured creditor.

[8] Defendant's Plea Agreement (Doc. 70) states: "Also, during the course of the conspiracy to distribute in excess of 1000 kilograms of marijuana, Bond obtained the following items in part, with proceeds from his illegal sale of marijuana, or used the items in furtherance of his drug trafficking activities . . . (3) 2002 Firebird Pro-Mod RaceCar, 77001[.]" The information stated by Mr. Ducusin in his supplemental brief (Doc. 94) does not affect the Court's determination that Defendant obtained the car with criminally derived proceeds. *See United States v. White*, 675 F.3d 1073, 1077-78 (8th Cir. 2012) ("An ancillary proceeding allows [a third party claimant] to establish her interest in the forfeited property as it compares to the interests of the government and other petitioners; it does not allow her to relitigate the nexus between the criminal acts of [the defendant] and the forfeited [property/proceeds].").

12

never have a successful claim under 853(n)(6)(A)"). However, Mr. Ducusin presented sufficient evidence to show by a preponderance of the evidence that he is a bona fide purchaser who was reasonably without cause to believe that the property was subject to forfeiture at the time he acquired his interest, under subsection (B).[9]

To establish status as a bona-fide-purchaser under section 853(n)(6)(B), a claimant must show: "(1) the claimant has a legal interest in the forfeited property; (2) the interest was acquired as a bona fide purchaser for value; and (3) the interest was acquired at a time when the claimant was reasonably without cause to believe that the property was subject to forfeiture." *Timley*, 507 F.3d at 1130-31. As discussed above, Mr. Ducusin has a legal interest in the Firebird. Moreover, while the Eighth Circuit has not yet addressed whether a person acquiring a statutory possessory lien interest can be a bona fide purchaser for value, both federal law[10] and Missouri law[11] support the conclusion that a secured creditor can qualify as a bona fide purchaser for value, despite not having "purchased" the property itself. *See generally United States v. Huntington Nat. Bank*, 682 F.3d 429, 435-36 (6th Cir. 2012) (holding courts look to state law help define the term 'bona fide purchaser' as used in § 853(n)(6)(B)). Here, Mr. Ducusin's

---

[9] The government's post-hearing brief (Doc. 93) did not address subsection (B), which provides an exception to the relation-back doctrine.

[10] *See United States v. Huntington Nat. Bank*, 682 F.3d 429, 435-36 (6th Cir. 2012) ("In sum, a party who takes a security interest in property, tangible or intangible, in exchange for value, can be a BFP of that property interest under § 853(n)(6)(B)."); *United States v. Frykholm*, 362 F.3d 413, 416 (7th Cir. 2004) ("The United States questions whether the holder of a security interest given in exchange for an antecedent debt can be a bona fide purchaser for value but has not pursued the point—*sensibly so*." (emphasis added)); *United States v. Petters*, 857 F. Supp. 2d 841, 846-47 (D. Minn. 2012) ("acquiring an interest in property as security for an antecedent debt is a bona fide purchase for value.").

[11] *See First Banc Real Estate, Inc. v. Johnson*, 321 S.W.3d 322, 336 n. 14 (Mo. Ct. App. 2010) ("A bona fide purchaser is one who pays valuable consideration, has no notice of outstanding rights of others, and acts in good faith."); *see also Blaise v. Ratliff*, 672 S.W.2d 683, 688 (Mo. Ct. App. 1984) ("A bank that loans money to a customer and takes a Deed of Trust to secure that loan, although technically speaking is not a bona fide purchaser for value because it purchases nothing, is in effect an innocent purchaser for value as the result of its loan on the property. . . . To be accorded [bona fide purchaser] status, the mortgage must be supported by a valuable consideration, it must have been taken in good faith and without fraud, and the mortgagee must have had neither actual nor constructive notice of outstanding rights of others in the property.").

business gave value in the form of materials and service in exchange Defendant's payment, which was secured by a statutory lien on the vehicle. Therefore, Mr. Ducusin qualifies as a "bona fide purchaser for value . . . of [his] interest in the property." *See* 21 U.S.C. § 853(n)(6)(B). Furthermore, the unrebutted evidence indicates that, while Mr. Ducusin and Defendant were "decent friends" associated by car races, Mr. Ducusin did not know Defendant sold drugs, nor was he aware of any criminal proceedings at the time he entered into the customer agreement with Defendant. Thus, when Mr. Ducusin "purchased" his interest in the property, he was "reasonably without cause to believe" the Firebird was subject to forfeiture.

In conclusion, the Court holds that Mr. Ducusin has a superior legal interest in the Firebird as compared to the government because he was a bona fide purchaser for value who, at the time he acquired his statutory lien over the vehicle, was reasonably without cause to believe the Firebird was subject to forfeiture. Accordingly, the government's motion to dismiss Mr. Ducusin's claim is **DENIED** and Mr. Ducusin's third-party forfeiture petition is **GRANTED**. Mr. Ducusin is entitled to enforce his lien on the vehicle in order to recover the remaining balance on Defendant's debt.

## DECISION

The government's Motion to Dismiss Ancillary Claims (Doc. 88) is **GRANTED IN PART AND DENIED IN PART**. The Court hereby **DISMISSES** the third party forfeiture petition filed by James Bond (Doc. 83).

The third-party forfeiture petition filed by Ashley Bond (Doc. 82) is **DENIED**. The 2002 BMW 745i seized on June 19, 2013 is properly forfeited to the government.

The third-party forfeiture petition filed by Rick Ducusin on behalf of Rooster's Paint and Speed (Doc. 84) is **GRANTED**. Mr. Ducusin is entitled to enforce his lien on the 2002 Firebird

Pro-Mod Race Car. Mr. Ducusin shall initiate an enforcement action on his lien pursuant to Mo. Rev. Stat. §§ 430.050 and 430.160 within thirty (30) days of the date of this Order, and shall provide proof of the same to Assistant United States Attorney Cynthia Hyde. If Mr. Ducusin fails to comply with this order, his interest in the vehicle shall be forfeited to the federal government. The government shall retain possession of the 2002 Firebird Pro-Mod Race Car until such time as the state court orders a sale of the vehicle to enforce Mr. Ducusin's lien. In the event that the state court does not order a sale of the vehicle, the 2002 Firebird Pro-Mod Race Car is forfeited to the federal government. In the event that the state court does order a sale of the vehicle and the sale results in funds in excess of the amount of Mr. Ducusin's lien, as determined by the state court, such excess funds shall be forfeited to the federal government.

**IT IS SO ORDERED**:

Date: January 28, 2015

                                           _/s/ Douglas Harpool_
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**